Original

Approved: _____

CHRISTOPHER J. CLORE
Assistant United States Attorney

Before:   THE HONORABLE KATHARINE H. PARKER
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - x
                              :
UNITED STATES OF AMERICA      :
                              :
          - v. -              :
                              :
JAMARRI REID,                 :
                              :
                              :
          Defendant.          :
                              :
- - - - - - - - - - - - - - - x

# 20 MAG 12898

## COMPLAINT

Violation of
18 U.S.C. § 922(g)

COUNTY OF OFFENSE:
BRONX

SOUTHERN DISTRICT OF NEW YORK, ss.:

DETECTIVE JASON FERNANDEZ, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD") and charges as follows:

## COUNT ONE

1.   On or about November 23, 2020, in the Southern District of New York and elsewhere, JAMARRI REID, the defendant, knowing that he had previously been convicted in a court of a crime punishable by a term of imprisonment exceeding one year, did knowingly and intentionally possess in and affecting commerce ammunition, to wit, a CCI Blazer .380-caliber shell casing, which previously had been shipped and transported in interstate and foreign commerce.

(Title 18, United States Code, Section 922(g)(1).)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

2.   I am a Detective with the NYPD. This affidavit is based upon my conversations with other law enforcement officers, my examination of reports and records prepared by law enforcement officers, my review of surveillance footage, and my involvement in

this investigation. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of my investigation. Where the contents of documents and the actions and statements of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3.   Based on my conversations with other NYPD officers and my review of police reports and records, I have learned, in substance and in part, that on or about November 23, 2020, at approximately 7:26 p.m., NYPD officers responded to the area located behind 1135 East 226th Drive, Bronx, New York (the "Shooting Location") after receiving an alert that a gunshot had been detected in the area.

4.   During the course of my participation in this investigation, I have reviewed surveillance videos collected from the vicinity of the Shooting Location (the "Shooting Videos"). The Shooting Videos show the following, in substance and in part:

a.   On or about November 23, 2020, at approximately 7:23 p.m., an individual wearing what appears to be a light-colored sweatshirt and dark-colored pants (the "Intended Target") can be seen standing on a walkway, just a few feet north of 1135 East 226th Drive (the "1135 Building"). In the video, it appears that the Intended Target is standing in front of and to the right of the 1135 Building.



b.    At approximately 7:24 p.m., the Intended Target is approached by an individual wearing what appears to be a light-colored hood, light-colored pants, and a dark-colored jacket (the "Shooter"). The Shooter approaches the Intended Target from the vicinity of 4056 Laconia Avenue (the "4056 Building").



c.    Seconds after the Shooter's arrival, the Intended Target and the Shooter walk together in the direction of the 1135 Building, at which point the Shooter appears to reach for an object on his person and what appears to be a muzzle flash can be seen immediately thereafter.



        d.    The Intended Target flees eastbound on a footpath towards 1138 East 229th Drive South (the "1138 Building"). The Shooter pursues the Intended Target and appears to be pointing what I believe to be a firearm in the direction of the Intended Target.



        e.    The Shooter continues to pursue the Intended Target eastbound on the footpath.



    f.   The Shooter chases the Intended Target for a few more feet before turning around, making a left on a nearby footpath that intersects with the path the Intended Target used to flee, and runs south towards East 226th Drive South.



    g.   The Intended Target continued east towards the 1138 Building and went inside.

    5.   Based on my conversations with law enforcement officers involved in this investigation, as well as my review of NYPD reports and records, I have learned, in substance and in part, that, based on the Shooting Videos, law enforcement canvassed the area for additional surveillance videos recorded prior to the shooting.

    6.   During the course of my participation in this investigation, I have reviewed surveillance videos collected from (i) a bodega located at 4027 Laconia Avenue (the "4027 Bodega Video"); (ii) a bodega located at 4045 Laconia Avenue (the "4045 Bodega Video")[1]; (iii) 4030 Laconia Avenue (the "4030 Laconia Video"); (iv) 4024 Laconia Avenue (the "4024 Laconia Video"); (v) 4034 Laconia Avenue (the "4034 Laconia Video"); and (vi) a pole camera located in the vicinity of East 228th Street and Laconia Avenue (the "Pole Camera," and, collectively, the "Additional

---

[1]   Based on my conversations with law enforcement officers involved in this investigation, I have learned that the timestamp on the 4045 Bodega Video is approximately 24 hours behind the actual time and, as a result, shows November 22, 2020.

Surveillance Videos"). The Additional Surveillance Videos show the
following, in substance and in part:

       a.    On or about November 23, 2020, at approximately
6:18 p.m., over an hour before the shooting, an individual wearing
clothing consistent with the Shooter ("Individual-1") can be seen
entering the 4027 Bodega.



       b.    At approximately 6:23 p.m., Individual-1 can be
seen leaving the 4027 Bodega and walking north on Laconia Avenue,
towards East 228th Street and the 4045 Bodega. Individual-1 stands
in the vicinity of the 4045 Bodega for several minutes.

     c.    At approximately 7:00 p.m., an individual wearing clothing consistent with the Intended Target ("Individual-2") can be seen entering the 4045 Bodega and standing near an ATM machine located near the front of the 4045 Bodega. Individual-2 appears to be speaking on a cellphone. Individual-2 remains in that location for several minutes.



     d.    At approximately 7:18 p.m., Individual-1 enters the 4045 Bodega, approaches Individual-2, and appears to attempt to shake Individual-2's hand. Individual-1 and Individual-2 then appear to have a conversation for several seconds before Individual-1 leaves the bodega. Individual-2 leaves the bodega approximately one minute later.



        e.    Shortly   after   leaving   the   4045   Bodega,   at
approximately 7:20 p.m., Individual-1 can be seen crossing Laconia
Avenue towards the 4056 Building and going inside. At approximately
7:21 p.m., Individual-2 can be seen leaving the 4045 Bodega,
crossing Laconia Avenue and walking towards the Shooting Location.

        f.    At   approximately   7:23   p.m.,   Indiviudal-1   can   be
seen exiting the 4056 Building and walking towards the Shooting
Location seconds before the shooting takes place.



        g.    Based on the foregoing, I believe that Individual-
1 is the Shooter and that Individual-2 is the Intended Target.

        7.    Based on my conversations with an NYPD Detective
involved in this investigation ("Detective-1"), I have learned, in
substance and in part, that, on or about December 1, 2020,
Detective-1 went to the 4045 Bodega to retrieve surveillance
footage. Upon Detective-1's arrival at the 4045 Bodega, Detective-
1 observed a black male, later identified as JAMARRI REID, the
defendant, wearing clothing consistent with that worn by the
Shooter, sitting outside.

        8.    Based on my conversations with Detective-1, I have
learned that, after observing JAMARRI REID, the defendant,
Detective-1 contacted another NYPD Detective ("Detective-2"), and
instructed Detective-2 to access the Pole Camera and observe REID
as well. Based on my conversations with Detective-1 and Detective-
2, I have learned, in sum and substance, that Detective-2 accessed
the Pole Camera and observed that REID was wearing clothing
consistent with that worn by the Shooter.

9.     Based on my conversations with law enforcement officers involved in this investigation, as well as my review of NYPD reports and records, I have learned, in substance and in part, that REID was placed under arrest shortly thereafter.

10.     Based on my participation in this investigation, I know that REID was taken to the 47th Precinct and interviewed. Based on my review of a recording of that interview, I know that REID waived his *Miranda* rights and agreed to speak with law enforcement. During the interview, the interviewing officers showed REID still images from the 4027 Bodega Video. REID made the following statements, in substance and in part:

      a.     REID identified himself as Individual-1 wearing the white hat, dark-colored jacket, white hooded sweatshirt, light-colored jeans, and knapsack in the still images depicted in paragraph 6(a) above.

      b.     REID denied being involved in the shooting.

      c.     REID stated that he may have stopped at the 4056 building on the night of the shooting to smoke or "take a piss."

      d.     REID stated that he was aware that he is a convicted felon.

      e.     After the interviewing officers left the room, REID stated the following, in sum and substance and in part: (i) "Why'd I go outside, bro?"; (ii) "I fucked up. I just had a son, bro."; and (iii) "I really fucked up, I fucked up. I just had a whole son."

11.     Based on my conversations with law enforcement officers involved in this investigation, I have learned, in substance and in part, that law enforcement obtained surveillance video from the 1138 Building after watching the Intended Target escape inside. Law enforcement officers compared still images of the Intended Target to photos contained in a law enforcement database of individuals who had provided that address to law enforcement.

12.     Law enforcement identified the Intended Target and interviewed him on or about December 1, 2020. During the interview, the Intended Target made the following statements, in sum and substance, and in part:

      a.     The Intended Target and the Shooter had an argument inside of a bodega shortly before the shooting.

b.   The Shooter confronted the Intended Target shortly after the argument, brandished a firearm, and fired a single shot at the Intended Target.

13.   During the interview, law enforcement showed the Intended Target a six-pack photo array containing a photograph of JAMARRI REID, the defendant. The Intended Target identified REID as the Shooter.

14.   Based on the foregoing, I believe that JAMARRI REID, the defendant, is the Shooter.

15.   Based on my conversations with law enforcement officers involved in this investigation, as well as my review of NYPD reports and records, I have learned that a single .380-caliber shell casing was recovered from the Shooting Location (the "Shell Casing").

16.   Based on my conversation with a Special Agent of the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives, I have learned that the Shell Casing was manufactured outside of the State of New York.

17.   I have reviewed criminal history records pertaining to JAMARRI REID, the defendant, which show that REID was convicted on or about September 9, 2019, in the Queens County Supreme Court of criminal contempt in the first degree, a Class E felony, in violation of New York Penal Law Section 215.51.

WHEREFORE, deponent prays that the defendant be imprisoned or bailed, as the case may be.

_____/s/ Jason Fernandez_____
JASON FERNANDEZ
Detective
NYPD

Sworn to before me by reliable
electronic means this
3rd 2 day of December, 2020

_____
THE HONORABLE KATHARINE H. PARKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK